UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LISA JACKSON-CRAWFORD,

        Plaintiff,

v.                                                                   Case No.: 6:21-cv-641-WWB-DCI

SCHOOL BOARD OF SEMINOLE
COUNTY, FLORIDA,

        Defendant.
_____/

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 29), Plaintiff's Response (Doc. 35), and Defendant's Reply (Doc. 44). For the reasons set forth below, Defendant's Motion will be granted.

**I.**      **BACKGROUND**

Plaintiff, Lisa Jackson-Crawford, began working for Defendant, the School Board of Seminole County, Florida, in 2012. (Doc. 29-1 at 7, 31; Doc. 35-1 at 1). In 2016, Plaintiff took a position as an exceptional student education ("**ESE**") support facilitator at Lake Brantley High School. (Doc. 29-1 at 9–14; Doc. 29-9 at 3; Doc. 30 at 87:8–11, 19–21). Plaintiff was an annual contract employee. (Doc. 29-1 at 9–14; Doc. 30 at 97:13–19).

As an ESE support facilitator, Plaintiff was assigned to classes with another teacher to assist in teaching ESE students in those classrooms. (Doc. 35-1 at 1–2; Doc. 43 at 18:6–10). At the beginning of the 2019–2020 school year, Plaintiff was assigned to teach four classes with Kimberly Wheeler and two classes with Elaine Knaub. (Doc. 37 at 14:16–15:12; Doc. 43 at 38:8–20). This required Plaintiff to move between buildings

throughout the day and resulted in a seventh period planning period. (Doc. 43 at 43:19–44:2, 47:22–48:1). When Plaintiff received her assignment for the 2019–2020 school year, she was unhappy because she did not want to move between buildings and had specifically requested to have a first period planning period so that she could assist in taking her child to school. (Doc. 29-7 at 18; Doc. 30 at 54:1–4, 67:14–25, 69:9–14, 70:14–19; Doc. 35-1 at 4; *see also* Doc. 29-3 at 62, 67–68).

Plaintiff brought her concerns to the new principal, Brian Blasewitz, and her direct supervisor, Assistant Principal Jeralee McIntyre. (Doc. 29-7 at 3–4, 6; Doc. 29-9 at 2, 5; Doc. 30 at 53:1–12, 111:1–17, 129:23–24; Doc. 37 at 13:8–22). After a couple of meetings, Blasewitz offered Plaintiff an alternative schedule with a first period planning period and all of her classes in the same building, but she would have to teach with Norma Pelezo. (Doc. 29-7 at 6; Doc. 29-9 at 6; Doc. 30 at 66:1–11, 112:23–113:5; Doc. 43 at 41:12–23). Plaintiff had previously requested not to work with Pelezo because of friction caused by Pelezo's unexpected leave of absence during the 2017–2018 school year. (Doc. 30 at 99:20–25, 100:17–101:20, 102:3–103:12, 105:3–8). Ultimately, given these two options, Plaintiff elected to work with Wheeler and Knaub and have a seventh period planning period. (Doc. 29-7 at 6; Doc. 29-9 at 6; Doc. 30 at 105:16–106:1, 110:8–24; Doc. 43 at 42:2–9).

On October 17, 2019, Plaintiff had a confrontation with McIntyre. (Doc. 29-7 at 9–10). While the exact details of that incident are disputed, there is no dispute that Plaintiff arrived late to her first period class, after the start of her contracted working hours, and ran into McIntyre. (Doc. 29-7 at 9–10, 20; Doc. 29-9 at 4; Doc. 29-13 at 3, Doc. 30 at 122:22–25, 123:3–6; Doc. 37 at 35:18–25). McIntyre asked Plaintiff where she had been

or why she was late. (Doc. 29-7 at 9–10; Doc. 29-13 at 3; Doc. 30 at 123:10–16, 131:6–16; Doc. 37 at 41:14–24). Plaintiff, feeling that the interaction had become unprofessional, went to Blasewitz's office and complained that McIntyre was harassing her. (Doc. 29-7 at 10; Doc. 29-9 at 7; Doc. 29-13 at 4; Doc. 30 at 123:19–124:22, 133:7–10; Doc. 43 at 57:4–17, 58:1–8). Thereafter, Plaintiff submitted a formal complaint to human resources ("**HR**") and asked that McIntyre cease communicating with her unless in writing or with representation present. (Doc. 29-7 at 11; Doc. 29-9 at 7–8; Doc. 29-14 at 3–4, 6–8; Doc. 29-15 at 2; Doc. 35-3 at 1; Doc. 35-8 at 14). Specifically, Plaintiff alleged that McIntyre was discriminating against and harassing her by conducting more frequent observations of her classes than other teachers, treating her in a "cold" and unfriendly manner, and speaking to her in an unprofessional way. (Doc. 29-14 at 6–8; Doc. 30 at 114:6–21, 116:1–9, 117:2–8, 136:8–17).

HR investigated Plaintiff's complaint and interviewed individuals regarding the October 17, 2019 incident. (Doc. 29-17 at 2–5; Doc. 29-18 at 2). Additionally, the School Administrator Manager reviewed the security tapes of the October 17, 2019 incident and of Plaintiff's arrival and departures during the month of October, noting that Plaintiff was frequently late for the start of her assigned classes and to begin work during her contracted hours. (Doc. 29-11 at 2, 4–6, 10–11). HR ultimately found Plaintiff's complaint to be unfounded. (Doc. 29-17 at 2–5; Doc. 35-3 at 3). Plaintiff subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission ("**EEOC**") sometime between December 2019 and January 2020 and notified Defendant that she

3

had done so.[1] (Doc. 30 at 144:5–8; Doc. 35-4 at 1; Doc. 35-8 at 15). Blasewitz and McIntyre participated in the EEOC's investigation. (*See generally* Doc. Nos. 35-5, 35-6, 35-9).

Following the October 17, 2019 incident, Blasewitz took over direct supervision of Plaintiff. (Doc. 29-7 at 11; Doc. 37 at 24:15–25:7; Doc. 43 at 105:12–17). Although Plaintiff felt that the administration—specifically Blasewitz and McIntyre—were generally less friendly after she made the complaint, she testified that Blasewitz continued to exchange pleasantries when he saw her, that none of her duties or responsibilities were changed, and that there were no further incidents with McIntyre or other employees. (Doc. 30 at 144:21–145:17, 162:24–163:7, 163:14–16). On May 27, 2020, Blasewitz decided not to renew Plaintiff's annual contract for the 2020–2021 school year and notified Plaintiff of the same via e-mail. (Doc. 29-1 at 3–4; Doc. 29-9 at 8–9; Doc. 30 at 38:16–20, 39:8–10; Doc. 43 at 132:25–133:9). McIntyre provided feedback regarding Plaintiff's performance during the time she acted as Plaintiff's supervisor, but the decision not to renew Plaintiff's contract was made solely by Blasewitz. (Doc. 29-7 at 11; Doc. 29-9 at 3; Doc. 35-7 at 11; Doc. 37 at 88:8–24; Doc. 43 at 115:7–18). As a result, Plaintiff filed this lawsuit alleging that the failure to renew her annual contract was the result of unlawful retaliation under Title VII of the Civil Rights Act ("**Title VII**"), 42 U.S.C. § 2000e *et seq.*, the Florida Civil

---

[1] The Charge of Discrimination submitted with Plaintiff's Response is not signed or dated. (Doc. 35-4 at 1). In the Amended Complaint, Plaintiff alleges that her charge was filed January 7, 2020, (Doc. 14, ¶ 30), which Defendant admits in its Answer, (Doc. 15, ¶ 30). But in Plaintiff's briefing she states that the EEOC complaint was filed January 13, 2020. (Doc. 35 at 6). In her deposition, Plaintiff testified that she thought it was filed in January 2020. (Doc. 30 at 144:5–8). However, the Court notes that the e-mail to HR, which includes the case number of Plaintiff's EEOC claim, was sent on December 3, 2019. (Doc. 35-8 at 15). Thus, it is unclear when precisely Plaintiff's EEOC complaint was filed.

Rights Act ("**FCRA**"), Fla. Stat. § 760.01 *et seq.*, and 42 U.S.C. § 1981. (*See generally* Doc. 14).

## II.     LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." Allen, 495 F.3d at 1314.

### III. DISCUSSION

In the Amended Complaint, Plaintiff alleges claims for retaliation under Title VII, the FCRA, and § 1981. (*See generally* Doc. 14; *see also* Doc. 35 at 11 n.21). Because retaliation claims under the FCRA and § 1981 are analyzed under the same framework as claims under Title VII, the Court will address Plaintiff's claims together. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) ("Because the FCRA is modeled after Title VII, [ ] claims brought under it are analyzed under the same framework[.]"); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (applying the same standard to claims under Title VII and § 1981).

"Title VII prohibits employers from retaliating against an employee 'because [s]he has opposed any practice made an unlawful employment practice by [Title VII.]'" *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a)). "A Title VII retaliation claim based on circumstantial evidence . . . is ordinarily analyzed under the *McDonnell Douglas* burden-shifting framework." *Id.* (citing *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020)); *see also Butts v. CentiMark Roofing Corp.*, No. 21-12565, 2022 WL 950938, at *3 (11th Cir. Mar. 30, 2022) (applying the *McDonnell Douglas* framework to a retaliation claim). Under the *McDonnell Douglas*[2] framework, "the plaintiff must [first] establish a prima facie case, which raises a presumption that the employer's decision was more likely than not based upon an impermissible factor." *Johnson*, 948 F.3d at 1325 (quotation omitted). "To establish a prima facie case of retaliation, a plaintiff must show: (1) that [s]he engaged in statutorily protected expression; (2) that [s]he suffered an adverse employment action; and (3) that

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

there is some causal relationship between the two events." *Id.* (quotation omitted). "[O]nce the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision." *Id.* "[I]f the defendant offers a legitimate, nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff to establish that the reason offered by the defendant 'was not the real basis for the decision, but a pretext for discrimination.'" *Id.* (quoting *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 806 (11th Cir. 1995)).

First, Defendant argues that Plaintiff cannot establish a prima facie case of retaliation. The parties do not dispute that Plaintiff engaged in protected activity when she made a complaint to the school's administration and when she filed an EEOC complaint sometime between December 2019 and January 2020. Nor do the parties dispute that Plaintiff was subject to an adverse employment action when her annual contract was not renewed. Rather, Defendant argues that Plaintiff cannot establish a causal connection between the two. "To prove a causal connection for a retaliation claim, a plaintiff need only demonstrate 'that the protected activity and the adverse action were not wholly unrelated.'" *Debe v. State Farm Mut. Auto. Ins. Co.*, 860 F. App'x 637, 639 (11th Cir. 2021) (quoting *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)). "One way the plaintiff can establish that the adverse action and protected activity were not 'wholly unrelated' is by showing a close temporal proximity between the employer's discovery of the protected activity and the adverse action." *Id.* "The temporal proximity must be 'very close.'" *Id.* (quoting *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)). "A three-to-four-month delay is too long, while a one-month gap may satisfy the test[.]" *Id.* at 639–40 (citations omitted).

Here, it is undisputed that Plaintiff filed a charge with the EEOC and informed HR of her complaint by e-mail dated December 3, 2019, which was forwarded to Blasewitz and McIntyre on the same day. (Doc. 35-8 at 15). Thereafter, Blasewitz and McIntyre submitted affidavits to the EEOC on January 31, 2020, in connection with Plaintiff's complaint. (Doc. 35-5 at 1, 5; Doc. 35-6 at 1, 5). Plaintiff was notified on May 27, 2020, that her annual contract was not renewed, and Blasewitz testified that he did not make the final decision to not renew until that date. (Doc. 29-1 at 3–4; Doc. 29-9 at 8–9; Doc. 43 at 132:25–133:9). Accordingly, even assuming Defendant was not aware of Plaintiff's last-claimed protected activity, filing an EEOC charge, until roughly January 31, 2020, there is still a nearly four-month gap between the protected activity and the adverse employment action. The Eleventh Circuit has recently held that a gap of "nearly four months" is "insufficient temporal proximity as a matter of law." *Rashad v. Fulton Cnty.*, 851 F. App'x 924, 926–27 (11th Cir. 2021) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). Thus, to the extent Plaintiff's claims are based on temporal proximity alone, they fail.

Plaintiff does not dispute that if she relies on temporally proximity alone, her claim runs afoul of binding Eleventh Circuit case law. Nor does she attempt to distinguish this case from recent decisions finding the time gap too great. Instead, in her Response, Plaintiff argues that during the time between her protected activity and her non-renewal, she was also subjected to "unprecedented secret surveillance," her attendance issues were documented in the HR report, she was not given a required performance evaluation, and was treated coldly by Blasewitz, McIntyre, and other members of the administration. (Doc. 35 at 13–14). Although Plaintiff fails to articulate the relevance of these events, the

Court assumes that Plaintiff was intending to argue that Defendant engaged in a pattern of antagonism sufficient to save her otherwise untimely claims.

"Where there is a significant time gap between the protected activity and the adverse action, the plaintiff must offer additional evidence to demonstrate a causal connection, such as a pattern of antagonism by the employer after the complaint and before the adverse action." *West v. Butler Cnty. Bd. of Educ.*, No. 2:18-cv-1061, 2022 WL 2667011, at *16 (M.D. Ala. July 11, 2022) (citing *Ward v. United Parcel Serv.*, 580 F. App'x 735, 739 (11th Cir. 2014)). "Such a pattern may be established by showing heightened scrutiny, negative criticism, differential treatment or violation of standard internal protocol and procedures." *Taylor v. Cardiovascular Specialists, P.C.*, No. 1:11-CV-4521, 2013 WL 12310269, at *25 (N.D. Ga. Dec. 11, 2013) (quotation omitted), *report and recommendation adopted*, 4 F. Supp. 3d 1374 (N.D. Ga. 2014). In her Response, Plaintiff fails to offer any legal authority for the proposition that the actions she cites amount to a "pattern of antagonism" and also fails to argue how these actions would allow a reasonable jury to find that her complaints were the but-for cause of the decision not to renew her contract. *See Annarumma v. City of High Springs*, No. 1:18-cv-143, 2020 WL 8367525, at *4 (N.D. Fla. Feb. 20, 2020) (holding that vague allegations of adverse actions without any explanation of how those related to protected activity was insufficient to overcome a motion for summary judgment).

To the extent Plaintiff complains that people started acting differently, she fails to state how this was in any way connected to her protected activity. Plaintiff testified that McIntyre treated her coldly prior to her complaint and she specifically asked that McIntyre cease contact with her after, and Plaintiff concedes that Blasewitz continued to treat her

courteously and professionally during her employment. In fact, Plaintiff fails to provide a concrete example of how Blasewitz treated her differently after the October 17, 2019 incident other than that he was less friendly. With respect to any other administrator, there is no evidence that these individuals were aware of Plaintiff's protected activity, were directed to treat Plaintiff differently or with increased suspicion, or that any of their perceived change in attitude was even directed at Plaintiff. The Court notes that Plaintiff's primary complaint in this regard is that groups of administrators no longer congregated and joked between classes. She has not directed this Court to any evidence that they dispersed only when Plaintiff was present or that their behavior was different when Plaintiff was not present. Additionally, Plaintiff has not directed this Court to any evidence that McIntyre, Blasewitz, or any other School Board employee made any disparaging or negative comments to her after she filed her complaint.

With respect to comments made in the HR investigation and the "secret surveillance"—an October 2019 review of the school's security footage to review the incident on October 17, 2019, and to determine when Plaintiff was arriving for work and her assigned classes (Doc. 29-11 at 4–6)—Plaintiff has also not directed this Court to any evidence that these actions were taken by or at the direction of Blasewitz, the ultimate decisionmaker in this case. *See Joyner v. City of Atlanta*, No. 1:16-cv-1780, 2019 WL 12426047, at *10 (N.D. Ga. Sept. 13, 2019), *report and recommendation adopted*, 2019 WL 12426038 (N.D. Ga. Oct. 9, 2019); *DeBose v. Univ. of S. Fla. Bd.*, No. 8:15-cv-2787, 2019 WL 3466658, at *4 (M.D. Fla. Apr. 24, 2019). Furthermore, both the HR report and the review of security footage happened at or near the time that Plaintiff made a formal complaint regarding the October 17, 2019 incident, which centered around her alleged

tardiness. Thus, Plaintiff has failed to state how these actions would constitute evidence of anything more than a part of the investigation into the complaint that she made.

Finally, Plaintiff relies on Blasewitz's failure to conduct a formal evaluation during the Spring 2020 semester. But Blasewitz testified that evaluations were not required to be performed during the Spring 2020 semester due to COVID-19. (Doc. 43 at 27:9–28:9). Plaintiff has not offered any evidence to dispute this testimony or to show that she was the only teacher that did not have an evaluation performed during the spring semester. Accordingly, the Court finds that Plaintiff has failed to show sufficient evidence of a "pattern of antagonism" to create a jury issue as to causal connection. *See West*, 2022 WL 2667011, at *16 (holding that discussing performance evaluations in front of the complainant, telling her she could find another job, and commenting that they would be hiring for her job next year was not sufficient); *Orr v. Russell Forest Prods., Inc.*, No. 5:19-cv-1173, 2021 WL 5216884, at *21–22 (N.D. Ala. July 14, 2021) (finding that a reasonable jury could find a pattern of antagonism and causation based on the decisionmaker's "consistent, racially charged termination threats and insults" and added job responsibilities); *Griffin v. Brennan*, No. 1:20-CV-584, 2021 WL 1259690, at *4 (N.D. Ga. Apr. 6, 2021) (finding that allegations that the plaintiff's supervisor intentionally made false performance accusations and lied regarding his knowledge of the plaintiff's protected activity was sufficient at the motion to dismiss stage); *Sharpe v. Glob. Sec. Int'l*, 766 F. Supp. 2d 1272, 1301 (S.D. Ala. 2011) (holding that evidence that the decisionmaker called the plaintiff a "complainer" and had made a prior adverse decision based on that comment sufficient); *see also Smith v. City of Fort Pierce*, No. 2:11-cv-14375, 2012 WL 12861131, at *8 (S.D. Fla. Aug. 28, 2012) (holding that "because [t]he intervening

acts . . . must have been material" a series of "trivial" acts that "would not dissuade an employee from engaging in protected activity" are insufficient to show a pattern of antagonism (quotation omitted)). Therefore, Plaintiff has failed to establish a sufficient prima facie case of retaliation to shift the burden to Defendant and Defendant is entitled to summary judgment on Plaintiff's claims. *See, e.g.*, *Jones v. Suburban Propane, Inc.*, 577 F. App'x 951, 954–55 (11th Cir. 2014) (holding that the district court did not err in granting summary judgment in favor of employer where employee did not have temporal proximity and did not show an issue of fact as to a pattern of antagonism).

IV.   **CONCLUSION**

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED**.
2. The Clerk is directed to enter judgment in favor of Defendant, and against Plaintiff, on each of her claims. Thereafter, the Clerk shall close this case.
3. All other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Orlando, Florida on April 5, 2023.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

12